1  Derek A. Newman, State Bar No. 190467
   derek@newmanlaw.com
2  NEWMAN DU WORS LLP
   100 Wilshire Boulevard, Suite 950
3  Santa Monica, CA 90401
   Telephone: (310) 359-8200
4  Facsimile: (310) 359-8190

5  John Du Wors, State Bar No. 233913
   john@newmanlaw.com
6  Derek Linke (*pro hac vice*)
   linke@newmanlaw.com
7  NEWMAN DU WORS LLP
   1201 Third Avenue, Suite 1600
8  Seattle, WA 98101
   Telephone: (206) 274-2800
9  Facsimile: (206) 274-2801

10 Attorneys for Plaintiff
   ESSOCIATE, INC.

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### SOUTHERN DIVISION

| | |
|---|---|
| ESSOCIATE, INC., a Delaware corporation,<br><br>Plaintiff,<br><br>v.<br><br>EAGLE WEB ASSETS, INC., an Illinois corporation; and EWA NETWORK, INC., an Illinois corporation,<br><br>Defendants<br><br>LINKTRUST SYSTEMS, INC.<br><br>Intervenor and Counterclaim Plaintiff. | Case No. SACV12-00831 JVS (MLGx)<br><br>**PLAINTIFF ESSOCIATE, INC.'S OPENING CLAIM CONSTRUCTION BRIEF**<br><br>The Honorable James V. Selna<br>Santa Ana Courthouse<br><br>Date: July 22, 2013<br>Time: 3:00 p.m.<br><br>Trial Date: March 25, 2014 |

# TABLE OF CONTENTS

I.   Introduction ................................................................................................ 1
II.  Background of the Technology ............................................................... 2
III. Proposed Constructions ........................................................................... 4
IV.  Discussion ................................................................................................ 5
     A.   Rules of claim construction ............................................................ 5
     B.   Terms to be construed ..................................................................... 8
          1.   "correlating" ............................................................................ 8
          2.   "unique identification system" ................................................ 9
          3.   "target Webmaster unique identifier" ................................... 10
          4.   "configuring an existing target affiliate system" ................. 11
          5.   "generating a URL" .............................................................. 12
          6.   "correlated target Webmaster Merchant unique identifier" .... 13
          7.   "source Webmaster unique identifier" .................................. 13
          8.   "merchant affiliate system" ................................................... 14
          9.   "Virtual Affiliates" ................................................................ 14
V.   Conclusion .............................................................................................. 15

## I. INTRODUCTION

Plaintiff Essociate, Inc. alleges that Defendants Eagle Web Assets, Inc. and EWA Network, Inc. (together, "Eagle") operate an online affiliate network which infringes Essociate's U.S. Patent No. 6,804,660 entitled "System method and article of manufacture for Internet based affiliate pooling" (the " '660 Patent").

The Court's October 11, 2012 Minute Order (Docket No. 27.) established a claim construction procedure under the Northern District of California's Local Patent Rules. Eagle did not meaningfully participate in that process—it never disclosed any proposed constructions and declined to join in Essociate's claim construction and prehearing statement. (*See* Docket No. 35). Eagle's only participation was to confirm its agreement to Essociate's list of terms to be construed and suggest two others, although Essociate remains in the dark about Eagle's proposed constructions, if any.

The Court recently permitted Eagle's counsel to withdraw because of Eagle's failure to communicate with its counsel. (June 18, 2013 Civil Minutes (Docket No. 40) at 22.) In that order, the Court noted that the previously scheduled July 22, 2013 *Markman* hearing remained on calendar. (*Id.*) Accordingly, Essociate intends on proceeding under the current *Markman* briefing schedule, including by submitting this opening claim construction brief.

Essociate's proposed constructions are based on plain meaning and intrinsic evidence. And with one minor exception, Essociate's proposed constructions are identical to this Court's '660 Patent claim constructions in *Essociate, Inc. v. Blue Whaler Investments, Ltd. et al.* ("*Blue Whaler*"), No. SACV10-2107-JVS (MLGx) (C.D. Cal. filed Feb. 6, 2012). A copy of the Court's February 6, 2012 claim construction order in *Blue Whaler* (the "*Blue Whaler* Order") is attached. Essociate respectfully requests that the Court adopt Essociate's proposed claim constructions.

## II. BACKGROUND OF THE TECHNOLOGY

Essociate's '660 Patent claims and discloses a novel "System, Method, and Article of Manufacture for Internet Based Affiliate Pooling" in the field of online affiliate marketing. The invention disclosed in the '660 Patent permits an online affiliate-marketing network to practice a more scalable and efficient form of affiliate marketing than taught by the prior art.

An online affiliate network—like the ones operated by Essociate or Eagle—practices the '660 Patent when it correlates a unique identifier associated with one of the webmasters in the network's affiliate system with a unique identifier functional in an online merchant's affiliate system for the merchant's own webmaster affiliates. The affiliate network provides its webmaster with a specially formatted link (also known as a URL or Uniform Resource Locator) that can be used on the webmaster's website in connection with an advertisement for the online merchant. For example, under some of the dependent claims in the '660 Patent, the link is provided in connection with a graphical banner advertisement which is placed on the webmaster's website for viewing by website visitors.

An Internet user visiting the webmaster's website may request—for example, by clicking on the banner advertisement—to access the website of the advertised merchant. Following that request, the user's web browser is redirected to a URL associated with the merchant's website which can be used to identify the originating webmaster and which can be used for tracking purposes.

Claim 1 of the '660 Patent is a method claim representative of the invention. It includes a preamble and four primary steps:

> 1. A method for providing Virtual Affiliates to an existing target affiliate system, the method comprising the operations of:
>
>     **configuring** an existing target affiliate system to receive referrals from a first plurality of Webmasters in an affiliate pool of source Webmasters such that the target Merchant affiliate system

recognizes a transaction as originating from a source Webmaster in an affiliate pooling system, including the step of: assigning a source Webmaster unique identifier for each of said first plurality of Webmasters each operating at least one web site;

**receiving a user request** for a target Merchant affiliate system URL from a web site operated by a particular referring Webmaster of the first plurality of Webmasters, wherein the user request includes the source Webmaster unique identifier for the particular referring Webmaster, and wherein the target Merchant affiliate system includes a unique identification system for its own affiliated Webmasters;

**correlating** the received source Webmaster unique identifier to a target Webmaster unique identifier corresponding to the unique identification system of the requested Merchant affiliate system

**generating a URL** for the requested Merchant affiliate system, wherein the URL includes the correlated target Webmaster Merchant unique identifier, whereby the URL can be utilized to access the requested Merchant affiliate system, and further provide identification of the source Webmaster for requisite tracking.

'660 Patent 21:44–22:8.

Independent claim 15 is a computer program claim which describes the use of code segments to execute the method described in claim 1. '660 Patent 22:65–23:26. Independent claim 28 is a means-plus-function claim for executing the method described in claim 1. '660 Patent 24:19–45.

## III. PROPOSED CONSTRUCTIONS

Essociate requests that the Court adopt the following claim constructions:

| '660 Patent Claim Term | Proposed Construction |
|---|---|
| **correlating** | "creating or recognizing a relationship between" |
| **unique identification system** | "a system for using unique identification information to identify at least one webmaster in an affiliate system" |
| **target Webmaster unique identifier** | "a unique identifying code assigned to each source Webmaster in the source affiliate pool that is functional within the target Merchant's home Affiliate System" |
| **configuring an existing target affiliate system** | "a data setup operation relating to a system, operated directly or indirectly by a merchant, in which a group of webmasters direct traffic to a merchant |
| **generating a URL** | "causing a URL to appear in a user's web browser without a further user request" |

| '660 Patent Claim Term | Proposed Construction |
|---|---|
| **correlated target Webmaster Merchant unique identifier** | "a unique identifying code assigned to each source Webmaster in the source affiliate pool that is functional within the target Merchant's home Affiliate System for which a relationship has been created or recognized with a source webmaster identifying code" |
| **source Webmaster unique identifier** | "a unique identifying code assigned to a webmaster within an affiliate pool of source webmasters" |
| **merchant affiliate system** | "a system, operated directly or indirectly by a merchant, in which a group of webmasters direct traffic to a merchant" |
| **Virtual Affiliates** | "Webmasters who direct traffic to one or more merchants via the placement of links, but who are independent from the merchants' own affiliate systems" |

## IV. DISCUSSION

### A. Rules of claim construction

Established principles of claim construction indicate that this Court should focus on the claim language of the '660 Patent, as well as the plain meaning of the terms used in those claims. The claim language defines the scope of a patented invention. *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 373 (1996). Any claim construction analysis must begin with, and remain centered upon, the plain language of the claims, because the patentee chose to use that language to "particularly point out and distinctly claim the subject matter which the patentee

regards as his invention." *Brookhill-Wilk 1, LLC v. Intuitive Surgical, Inc.*, 334 F.3d 1294, 1298 (Fed. Cir. 2003) (internal cites omitted); *Helmsderfer v. Bobrick Washroom Equipment, Inc.*, 527 F.3d 1379, 1383 (Fed. Cir. 2008) ("The patentee chooses the language and accordingly the scope of his claims."). This primary focus on the claim language flows from the above-mentioned "bedrock principle" that the scope of an invention is defined by the claims. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005); *see also Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996) ("the words of the claims themselves…define the scope of the patented invention".)

If—and only if—the plain meaning of the claim language is ambiguous, the Court may also look to other intrinsic evidence such as the specification and prosecution history of the asserted patent. *See, e.g., Vitronics*, 90 F.3d at 1583. However, while the written description and prosecution history can be helpful in determining the meaning of claim language, they do not define a patentee's right to exclude: that is the "function and purpose of claims." *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 980 (Fed. Cir. 1995). Indeed, when the language at issue is straightforward, construction may involve "little more than the application of the widely accepted meaning of commonly understood words." *Phillips*, 415 F.3d at 1314. The words of the claim must be given their plain meaning unless the plain meaning is inconsistent with the specification. *In re Zletz*, 893 F.2d 319, 321 (Fed. Cir. 1989); *Chef America, Inc. v. Lamb-Weston, Inc.*, 358 F.3d 1371, 1372 (Fed. Cir. 2004) (Ordinary, simple English words whose meaning is clear and unquestionable, absent any indication that their use in a particular context changes their meaning, are construed to mean exactly what they say. Thus, "heating the resulting batter-coated dough to a temperature in the range of about 400 °F to 850 °F" required heating the dough, rather than the air inside an oven, to the specified temperature.).

Claim language is presumed to carry its ordinary meaning. "[The Federal

Circuit has] frequently stated that the words of a claim are 'generally given their ordinary and customary meaning.' " *Phillips*, 415 F.3d at 1312-13 (internal citations omitted). A patentee may choose to be his own lexicographer by assigning a novel definition to a claim term, but any such term must be defined "with reasonable clarity, deliberateness, and precision." *In re Paulsen*, 30 F.3d 1475, 1480 (Fed. Cir. 1994). Absent an express intent to provide such a novel definition, the presumption of ordinary meaning prevails; it is " a 'heavy presumption' that a claim term carries its ordinary and customary meaning." *Teleflex, Inc. v. Ficosa North America Corp.*, 299 F.3d 1313, 1325 (Fed. Cir. 2002) (internal cites omitted); *see also Brookhill-Wilk*, 334 F.3d at 1298.

This Court previously construed all of the '660 Patent claim terms at issue here in the *Blue Whaler* Order. Prior *Markman* rulings may be accorded "reasoned deference" in assessing the disputed claim terms. *See, e.g.*, *Finisar Corp. v. DirecTV Group, Inc.*, 523 F.3d 1323, 1329 (Fed. Cir. 2008) (noting that "in the interests of uniformity and correctness," the Federal Circuit "consults the claim analysis of different district courts on the identical terms in the context of the same patent."); *Visto Corp. v. Sproqit Techs., Inc.*, 445 F. Supp. 2d 1104, 1108 (N.D. Cal. 2006). The constructions in the *Blue Whaler* Order are all based on plain meaning and intrinsic evidence.[1]

And while the *Blue Whaler* Order is not binding, it is entitled to consideration and careful analysis under the doctrine of *stare decisis*. *See Amgen, Inc. v. F. Hoffmann-La Roche Ltd.*, 494 F. Supp. 2d 54, 60 (D. Mass. 2007) (citing *United States v. Rodriguez-Pacheco*, 475 F.3d 434, 441 (1st Cir. 2007)); *Tex.*

---

[1] Five '660 Patent claim terms have also been construed by the Western District of Wisconsin. *See Essociate, Inc. v. Azoogle.com, Inc., et al.*, No. 11-cv-00727 (W.D. Wis. filed May 17, 2013). The *Azoogle* court construed the terms "Virtual Affiliates," "target Merchant affiliate system" and "existing target affiliate system", "source Webmaster unique identifier," and "target Webmaster unique identifier." The *Azoogle* court noted that this Court's *Blue Whaler* constructions were of "little use in the context of" the parties' arguments in that case. *Id*. at 13.

*Instruments, Inc. v. Linear Techs. Corp.*, 182 F. Supp. 2d 580, 589 (E.D. Tex. 2002).

Application of these principles supports adoption of Essociate's proposed constructions of the terms at issue.

**B.     Terms to be construed**

**1.     "correlating"**

Essociate proposes that this term should be construed to mean: "creating or recognizing a relationship between". The Court adopted this construction in *Blue Whaler* because it is supported by plain meaning and intrinsic evidence. *Blue Whaler* Order at 4–5.

In the '660 Patent, the word "correlate" means to create or recognize a relationship:

> "From the request, the affiliate pooling system knows which Merchant is the target of the request, such that the Webmaster's unique ID for the affiliate pooling system (source webmaster ID) can then be **correlated** to a unique ID for the Merchant's affiliate system (target webmaster ID)."

'660 Patent 10:63–67 (emphasis added). The paragraph immediately preceding the above quote states that "**[r]ecognition** of the source system can occur via an identifier (source system identifier) in the URL request that is received by the affiliate pooling system." '660 Patent 10:57–59 (emphasis added). The identification of the source in the URL request allows the system to recognize which merchant is the target of the request—thus, the system creates or recognizes a relationship between the source webmaster ID and the target webmaster ID.

The Merriam-Webster Dictionary definitions of "correlate" include "to **establish** a mutual or reciprocal relation between; to show correlation or a causal

relationship between; to present or set forth so as to show relationship".[2] This is the plain and ordinary meaning of "correlate", it coincides with Essociate's use of the term in the patent, and this is sufficient to end the inquiry. *See Vitronics*, 90 F.3d at 1582 ("[W]e look to the words of the claims themselves…to define the scope of the patented invention"); *Phillips*, 415 F.3d at 1312-13 ("We have frequently stated that the words of a claim are 'generally given their ordinary and customary meaning.'") (internal citations omitted).

And as noted in *Blue Whaler*, the '660 Patent specification "provides for an embodiment that may not only recognize an existing relationship between a target webmaster unique identifier ("TWID") and Source Webmaster unique Identifier ("SWID"), but also can **create** one." *Blue Whaler* Order at 6 (citing '660 Patent 11:5-13; 15:18-27). Essociate's proposed construction accurately reflects the plain meaning of this term.

### 2. "unique identification system"

Essociate proposes that this term should be construed to mean: "a system for using unique identification information to identify at least one webmaster in an affiliate system". The Court adopted this construction in *Blue Whaler* because the "ordinary and plain meaning" of the terms "system" and "unique" is "readily apparent to a lay person." *Blue Whaler* Order at 6-7. Essociate agrees.

Essociate's proposed construction is also supported by the specification:

> "[A] target Webmaster ID…is a unique identifying code functional within the target Merchant's home affiliate system and which corresponds to the **unique identification system** of the requested Merchant's home affiliate system."

'660 Patent 4:7–11 (emphasis added). And the '660 Patent indicates both source

---

[2] *See* Merriam-Webster Online, *Correlate*, http://www.merriam-webster.com/dictionary/correlate (last visited June 25, 2013).

and target affiliate systems rely on unique identification information to recognize affiliates: "the URL received includes…the unique identifying code for the Webmaster within his origin affiliate system or pool (source Webmaster ID)…" '660 Patent 14:46–49.

As noted in the *Blue Whaler* Order, this construction comports with the plain and ordinary meanings of the terms "system" and "unique." The Merriam-Webster Dictionary definitions of "system" include "a regularly interacting or interdependent group of items forming a unified whole."[3] And its definitions of "unique" include "being the only one."[4] Essociate's proposed construction accurately reflects this meaning.

### 3. "target Webmaster unique identifier"

Essociate proposes that this term should be construed to mean: "a unique identifying code assigned to each source Webmaster in the source affiliate pool that is functional within the target Merchant's home Affiliate System". The Court adopted this construction in *Blue Whaler* because it "properly reflects the contextual ordinary and plain meaning of the term without imported limitations." *Blue Whaler* Order at 10.

And Essociate's proposed construction is supported by the specification, which defines this term:

> "The source Webmaster ID is correlated to a **target Webmaster ID, which is a unique identifying code functional within the target Merchant's home affiliate system** and which corresponds to the unique identification system of the requested Merchant's home affiliate system."

---

[3] *See* Merriam-Webster Online, *System*, http://www.merriam-webster.com/dictionary/system (last visited June 25, 2013).

[4] *See* Merriam-Webster Online, *Unique*, http://www.merriam-webster.com/dictionary/unique (last visited June 25, 2013).

'660 Patent 4:6–11 (emphasis added).

    **4.    "configuring an existing target affiliate system"**

Essociate proposes that this term should be construed to mean: "a data setup operation relating to a system, operated directly or indirectly by a merchant, in which a group of webmasters direct traffic to a merchant". The Court adopted this construction in *Blue Whaler* because it "reflects the plain meaning of the term." *Blue Whaler* Order at 12.

The '660 Patent specification frequently discusses a data setup operation when referring to the configuration of different systems. *See* '660 Patent 8:32-24; 8:35-41; 9:31-34. And the rest of this term, "an existing target affiliate system," should be construed as "a system, operated directly or indirectly by a merchant, in which a group of webmasters direct traffic to a merchant" consistent with the specification:

- "Most Merchants currently utilize some form of affiliate system to increase sales, track traffic, and compensate Webmasters for referrals of traffic and/or transactions". '660 Patent 2:8–10.
- "the Merchant retains full access to and control of its affiliate system". '660 Patent 2:49–50.
- "a user (i.e. traffic of the Webmaster from the affiliate pool) clicks a URL (on the Webmaster's web site) which…identifies the target Merchant system whose products or services are being advertised". '660 Patent 10:33–37.
- "the affiliate pooling system knows which Merchant is the target of the request, such that the Webmaster's unique ID for the affiliate pooling system (source webmaster ID) can then be correlated to a unique ID for the Merchant's affiliate system (target Webmaster ID)". '660 Patent 10:63–67.

Each of those references in the specification supports Essociate's proposed

construction.

### 5. "generating a URL"

Essociate proposes that this term should be construed to mean: "causing a URL to appear in a user's web browser without a further user request". The Court adopted this construction in *Blue Whaler* based on plain meaning and intrinsic evidence: "The claim is analyzed as a whole in construction and for a finding of infringement. The context is provided by the other language in the claim explicitly." *Blue Whaler* Order at 14.

The '660 Patent specification expressly describes the return of a URL which enables a user to access the target Merchant's existing affiliate system without a further user request:

> "In a new URL determination operation **612**, a new URL is determined based on the target Merchant and the target Webmaster ID. Once the correlated ID number for use by the target Merchant affiliate system is determined by the lookup function, **the system returns a new URL, containing the "looked up" code and acting as an entry mechanism into the target Merchant's existing affiliate system.** The format of the URL (i.e., syntax for the location of the target Merchant affiliate system) is determined using the configuration information specified during a data setup operation, as described in greater detail above. **At this point, the user (traffic) is handed to the Merchant**, and the transaction is then either completed or abandoned."

'660 Patent 15:29–41 (emphasis added). This is consistent with the discussion of the key "hand off operation" in the specification (which occurs immediately after the "correlation operation". *See* '660 Patent, Fig. 5. In a hand off operation, the "affiliate pooling system hands off the traffic to the target Merchant affiliate system. In order for the hand off to the Merchant affiliate system to run smoothly,

the Merchant should be prepared to recognize traffic from the Virtual Affiliate system, as described above." '660 Patent 11:38–42; *see also* '660 Patent 8:65–67 (hand off operation involves "redirection" to the target Merchant affiliate system).

### 6. "correlated target Webmaster Merchant unique identifier"

Essociate proposes that this term should be construed to mean: "a unique identifying code assigned to each source Webmaster in the source affiliate pool that is functional within the target Merchant's home Affiliate System for which a relationship has been created or recognized with a source webmaster identifying code". The Court adopted this construction in *Blue Whaler* because it reflected the Court's constructions of "correlating" and "target Webmaster unique identifier":

> "The same terms appearing in different portions of the claims should be given the same meaning unless it is clear from the specification and prosecution history that the terms have different meanings at different portions of the claims."

*Blue Whaler* Order at 15 (quoting *Fin Control Systems Pty, Ltd. v. OAM, Inc.*, 265 F.3d 1311, 1318 (Fed. Cir. 2001)).

### 7. "source Webmaster unique identifier"

Essociate proposes that this term should be construed to mean: "a unique identifying code assigned to a webmaster within an affiliate pool of source webmasters". The Court adopted this construction in *Blue Whaler* because it "reflect[ed] the plain and ordinary meaning … as determined by the context of the claim and specification." *Blue Whaler* Order at 17.

The specification of the '660 Patent is consistent with Essociate's proposal: "each Webmaster in the affiliate pool 306 has assigned to it a unique identifying code, referred to below as the 'source Webmaster ID'…" '660 Patent 7:64–66. The plain language of the '660 Patent indicates that a source webmaster unique identifier is a code that uniquely identifies a webmaster within an affiliate pool of such webmasters (*i.e.*, "source webmasters"). The specification supports

Essociate's proposed construction.

### 8. "merchant affiliate system"

Essociate proposes that the term "merchant affiliate system" should be construed to mean: "a system, operated directly or indirectly by a merchant, in which a group of webmasters direct traffic to a merchant." The Court adopted this construction in *Blue Whaler*.

As used in the '660 Patent, the term "merchant affiliate system" is essentially synonymous with an "existing target affiliate system." Both terms can be described as "a system, operated directly or indirectly by a merchant, in which a group of webmasters direct traffic to a merchant." This construction is consistently supported by the specification. '660 Patent 2:8–10; 2:49–50; 10:33–37; 10:63–67. Each of those references in the specification supports Essociate's proposed construction.

The *Blue Whaler* Order notes that the '660 Patent claim language "shifts from describing the 'existing target affiliate system' to 'the target merchant affiliate system'" and holds that "the context of the language and the specification shows these terms are referring to the same system." *Blue Whaler* Order at 13. Essociate's proposed construction is consistent with the specification and the context of the claim language.

### 9. "Virtual Affiliates"

Essociate proposes that this term should be construed to mean: "Webmasters who direct traffic to one or more merchants via the placement of links, but who are independent from the merchants' own affiliate systems." This is essentially the same as the Court's *Blue Whaler* construction: "webmasters who direct traffic to one or more merchants via the placement of links to merchant websites on the webmasters' websites, but who are independent from the merchants' own affiliate systems." *Blue Whaler* Order at 19–20, 22. Either definition would be appropriate.

Essociate's proposed construction here more closely tracks the language of

the specification than the *Blue Whaler* definition: "Most Merchants currently utilize some form of affiliate system…the Webmaster directs traffic to given Merchants via their selection and placement of Merchant links" ('660 Patent 2:8–16) and "The Virtual Affiliate remains independent from the Merchant's affiliate system." ('660 Patent 7:50–51).

## V. CONCLUSION

Essociate's proposed claim constructions are based on plain and ordinary meaning and intrinsic evidence. They are also nearly identical to constructions adopted by this Court last year in the *Blue Whaler* case. Accordingly, Essociate respectfully requests that the Court issue a claim construction order adopting Essociate's proposed constructions.

Dated: June 25, 2013       NEWMAN DU WORS LLP

s/ Derek Linke
Derek A. Newman, State Bar No. 190467
derek@newmanlaw.com
Derek Linke (*pro hac vice*)
linke@newmanlaw.com
John Du Wors, State Bar No. 233913
john@newmanlaw.com

Attorneys for Plaintiff
Essociate, Inc.