UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | **CV 10-2107 JVS(MLGx)**\*\*\* | Date | February 6, 2012 |
| | consolidated with CV 10-6892 JVS (MLGx) | | |

| | |
|---|---|
| Title | **Essociate, Inc. v Blue Whaler Investments, LLC, et al.** |
| | Consolidated with ShareASale.com, Inc. v. Essociate, Inc. |

Present: The Honorable        James V. Selna

| Karla J. Tunis | Not Present |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Not Present | Not Present |

**Proceedings:**   (IN CHAMBERS) Order re Claim Construction

**The Court, having been informed by the parties in this action that they submit on the Court's tentative ruling, hereby rules accordance with the tentative ruling as follows as to the Claim Construction of the U.S. Patent No. 6,804,660:**

Plaintiff Essociate, Inc. ("Essociate") and Defendant Direct ROI, LLC ("Direct ROI") have submitted to the Court proposed claim constructions regarding certain language in U.S. Patent No. 6,804,660 ("the '660 Patent"). The relevant claim language is construed by the Court below.

I.   BACKGROUND

Essociate commenced suit against several defendants for infringing the '660 patent relating to internet advertising systems. At this stage only defendant Direct ROI remains. Essociate contends that Direct ROI infringes claims 1-9, 13-22, 26-35, and 39-40 of the '660 patent. Pursuant to Patent Local Rule 4-3,[1] the parties submitted a Joint Claim Construction and Prehearing Statement ("Joint Statement") with their proposed constructions of the disputed terms. (Docket No. 133.) After reviewing the Joint Statement, the Court directed the parties to limit themselves to twelve terms agreed upon

---

[1]The Court has adopted the Northern District of California's Patent Local Rules for patent matters.

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

Case No.  **CV 10-2107 JVS(MLGx)*****            Date  February 6, 2012
consolidated with CV 10-6892 JVS (MLGx)

Title  **Essociate, Inc. v Blue Whaler Investments, LLC, et al.**

Consolidated with ShareASale.com, Inc. v. Essociate, Inc.

by the parties, or six selected by each if unable to agree.  (Docket No. 134.)  The parties
submitted opening claim construction briefs addressing six terms selected by each party.
(Pl.'s Op. Br., Docket No. 136; Def.'s Op. Br., Docket No. 135.)  Essociate filed a
response claim construction brief.  (Pl.'s Resp. Br., Docket No. 139.)

## II.   LEGAL STANDARD

It is well settled that claim construction is "exclusively within the province of the
court."  Markman v. Westview Instruments, Inc., 517 U.S. 370, 372 (1996).  Such
construction "begins and ends" with the claim language itself, Interactive Gift Express,
Inc. v. Compuserve, Inc., 256 F.3d 1323, 1331 (Fed. Cir. 2001), but extrinsic evidence
may also be consulted "if needed to assist in determining the meaning or scope of
technical terms in the claims."  Pall Corp. v. Micron Separations, Inc., 66 F.3d 1211,
1216 (Fed. Cir. 1995).

In construing the claim language, the Court begins with the principle that "the
words of a claim are generally given their ordinary and customary meaning."  Phillips v.
AWH Corp., 415 F.3d 1303, 1312 (Fed. Cir. 2005) (internal quotation marks omitted).
Further, this ordinary and customary meaning "is the meaning that the [claim] term
would have to a person of ordinary skill in the art in question at the time of the invention,
i.e., as of the effective filing date of the patent application."  Id. at 1313.  "[T]he person
of ordinary skill in the art is deemed to read the claim term not only in the context of the
particular claim in which the disputed term appears, but in the context of the entire patent,
including the specification."  Id.

"In some cases, the ordinary meaning of claim language as understood by a person
of skill in the art may be readily apparent even to lay judges, and claim construction in
such cases involves little more than the application of the widely accepted meaning of
commonly understood words.  In such circumstances general purpose dictionaries may be
helpful."  Id. at 1314.  In other cases, "determining the ordinary and customary meaning
of the claim requires examination of terms that have a particular meaning in a field of
art."  Id.  In those cases, "the court looks to those sources available to the public that
show what a person of skill in the art would have understood the disputed claim language
to mean."  Id.  These sources include "the words of the claims themselves, the remainder

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.  **CV 10-2107 JVS(MLGx)**\*\*\*                     Date   February 6, 2012
consolidated with CV 10-6892 JVS (MLGx)

Title   **Essociate, Inc. v Blue Whaler Investments, LLC, et al.**

Consolidated with ShareASale.com, Inc. v. Essociate, Inc.

___

of the specification, the prosecution history, and extrinsic evidence concerning relevant
scientific principles, the meaning of technical terms, and the state of the art." <u>Id.</u> (internal
quotation marks omitted).

The claim terms are not presumed to have the meaning that a person of ordinary
skill in the relevant art would ordinarily attribute to them if (1) the patentee acts as his
own lexicographer, or (2) the claim term is too vague for an accurate meaning to be
ascertained from the language used. <u>Novartis</u> <u>Pharms.</u> <u>Corp.</u> <u>v.</u> <u>Abbott</u> <u>Labs.</u>, 375 F.3d
1328, 1334 (Fed. Cir. 2004). All that is required for a patentee to act as his own
lexicographer is that a different meaning is set out in the specification in a manner
sufficient to provide notice of the meaning to a person of ordinary skill in the art. <u>In re</u>
<u>Paulsen</u>, 30 F.3d 1475, 1480 (Fed. Cir. 1994).

It is improper to read limitations from the specification into the claim.
<u>Callicrate</u> <u>v.</u> <u>Wadsworth</u> <u>Mfg.,</u> <u>Inc.</u>, 427 F.3d 1361, 1368 (Fed. Cir. 2005) (citing
<u>Phillips</u>, 415 F.3d at 1312 "[I]f we once begin to include elements not mentioned
in the claim, in order to limit such claim. . . . we should never know where to stop.")
Although a specification may be highly relevant to construing a claim, the "written
description part of the specification itself does not delimit the right to exclude. That is the
function and the purpose of the claims." <u>Markman</u>, 52 F.3d at 980.

With these principles in mind, the Court now turns to the construction
of the claim language at issue.

III.   <u>DISCUSSION</u>

A.   <u>"Correlating"</u>

| Claim Term | Plaintiffs' Construction | Defendants' Construction |
|---|---|---|
| "correlating" (Claims 1-40) | "Creating or recognizing a relationship between." | "Using a Source Webmaster ID included in a referred request to a particular merchant to search a |

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | **CV 10-2107 JVS(MLGx)*** | Date | February 6, 2012 |

consolidated with CV 10-6892 JVS (MLGx)

| Title | **Essociate, Inc. v Blue Whaler Investments, LLC, et al.** |

Consolidated with ShareASale.com, Inc. v. Essociate, Inc.

|  |  | database of previously stored unique identifiers or codes to identify a particular Target Webmaster ID that can be used by a Merchant Affiliate System, and that allows the return of a URL that enables traffic to be handed off to and recognized by the Merchant Affiliate System" |
|---|---|---|

Essociate argues that "correlating" should be construed to mean "creating or recognizing a relationship between" because that is the ordinary and plain meaning of the terms as reflected by the dictionary definition and the patent specification's use of the term. (Pl.'s Op. Br. 5.) It argues that the relationship can be both created or recognized because the dictionary definition shows the plain and ordinary meaning of the term includes the establishing of a relationship. (Id. at 6.) Essociate argues that Direct ROI's proposed construction includes numerous limitations imported from the specification that are not contained in the plain meaning, nor supported by the patent language generally. (Id.) However, they point out, Direct ROI does acknowledge the process involves the recognition of a relationship. (Id.)

Direct ROI's arguments in support of its construction are comprised solely of citations to the patent specification without explanation. (Def.'s Op. Br. 4.) It additionally argues that Essociate's proposal "includes the adjective 'causal,' thus blend[ing] two distinct concepts: Causation and correlation." (Id.)

Essociate responds by pointing out that its construction doesn't include "causal" and pointing out again that Direct ROI's construction lists numerous limitations imported from the specification. (Pl.'s Resp. Br. 2.)

The Court agrees with Essociate that Direct ROI imports numerous limitations from the specification to the meaning of a single term. This is improper. Callicrate, 427

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | **CV 10-2107 JVS(MLGx)**\*\*\* | Date | February 6, 2012 |
| | consolidated with CV 10-6892 JVS (MLGx) | | |

| | |
|---|---|
| Title | **Essociate, Inc. v Blue Whaler Investments, LLC, et al.** |
| | Consolidated with ShareASale.com, Inc. v. Essociate, Inc. |

F.3d at 1368. Further, several of the imported limitations considered in the context of the entire claim would be redundant. Claim 1 provides "correlating the received source webmaster unique identifier to a target webmaster unique identifier corresponding to the unique identification system of the requested Merchant Affiliate system . . . ." '660 Patent 21:66-22:2. Thus, Direct ROI's construction would in effect state:

> Using a <u>Source</u> <u>Webmaster</u> <u>ID</u> included in a referred request to a particular merchant to search a database of previously stored unique identifiers or codes to identify <u>a particular</u> <u>Target</u> <u>Webmaster</u> <u>ID</u> that <u>can</u> <u>be</u> <u>used</u> <u>by</u> <u>a</u> <u>Merchant</u> <u>Affiliate</u> <u>System</u>, and that allows the return of a URL that enables traffic to be handed off to and recognized by the Merchant Affiliate System the received <u>source</u> <u>webmaster</u> <u>unique</u> <u>identifier</u> to <u>a</u> <u>target</u> <u>webmaster</u> <u>unique</u> <u>identifier</u> <u>corresponding</u> <u>to</u> <u>the</u> <u>unique</u> <u>identification</u> <u>system</u> <u>of</u> <u>the</u> <u>requested</u> <u>Merchant</u> <u>Affiliate</u> <u>system</u>

This construction would be redundant in several ways. Such a redundancy violates several concepts of claim construction. First, such a construction seems reliant on analyzing "correlating" in a vacuum when claims must be analyzed as a whole, giving context to each term. <u>Phillips</u>, 415 F.3d at 1314-15 (discussing how use of the modifier "steel" for baffles implies that baffles itself does not inherently mean steel). Further, Direct ROI's construction would not give effect to all the terms of the claim since the limitations would be incorporated into the word "correlating." Specifically, the entire phrase "received source webmaster unique identifier to a target webmaster unique identifier corresponding to the unique identification system of the requested Merchant Affiliate system" would no longer have meaning since the construction subsumes these requirements. All terms of a claim are presumed to have meaning, and the claim construction should give effect to all terms. <u>Innova/Pure</u> <u>Water, Inc. v.</u> <u>Safari</u> <u>Water</u> <u>Filtration</u> <u>Sys.</u>, 381 F.3d 1111, 1119 (Fed. Cir. 2004); <u>Bicon, Inc. v.</u> <u>Straumann</u> <u>Co.</u>, 441 F.3d 945, 950 (Fed. Cir. 2006). The Court therefore rejects Direct ROI's proposed construction.

The Court agrees with Essociate's construction of "correlating." The term is a word where the ordinary meaning to a person of skill in the art is readily apparent

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   **CV 10-2107 JVS(MLGx)*** **              Date   February 6, 2012
consolidated with CV 10-6892 JVS (MLGx)

Title   **Essociate, Inc. v Blue Whaler Investments, LLC, et al.**

Consolidated with ShareASale.com, Inc. v. Essociate, Inc.

---

to a lay person. As such, the general purpose dictionary definition is helpful. Further the specification provides for an embodiment that may not only recognize an existing relationship between a target webmaster unique identifier ("TWID") and Source Webmaster unique Identifier ("SWID"), but also can create one. '660 Patent 11:5-13; 15:18-27. Therefore, the Court will construe "correlating" as "creating or recognizing a relationship between."

   B.      "Unique identification system"

| Claim Term | Plaintiffs' Construction | Defendants' Construction |
|---|---|---|
| "Unique identification system" (Claims 1-40) | "A system for using unique identification information to identify at least one webmaster in an affiliate system." | "A system that looks up a unique identifying code (that is, a Target Webmaster ID) during a correlation process based on a Source Webmaster ID included in a received URL request, which is then used as an affiliate tracking code within the Merchant's existing Affiliate System" |

   Essociate argues its construction is supported by the specification and the ordinary and plain meaning of the words unique and system. (Pl.'s Op. Br. 7.) Specifically, the patent indicates that unique identification systems are used in all types of affiliate systems, including source and target affiliate systems. (Id.) Meanwhile, it argues Direct ROI's construction improperly limits the term to only target affiliate systems without justification. (Id. at 8; Pl.'s Resp. Br. 3.)

   Direct ROI argues its construction is consistent with the patent itself, citing to the specification. (Def.'s Op.. Br. 4.) It argues that Essociate's construction is overly generic and reliant on dictionary definitions and points out that Essociate's

Case 8:10-cv-02107-JVS-MLG   Document 401   Filed 02/06/12   Page 7 of 23   Page
ID #:231

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | |
|---|---|---|
| Case No. | **CV 10-2107 JVS(MLGx)**\*\*\* | Date   February 6, 2012 |
| | consolidated with CV 10-6892 JVS (MLGx) | |

| | |
|---|---|
| Title | **Essociate, Inc. v Blue Whaler Investments, LLC, et al.** |
| | Consolidated with ShareASale.com, Inc. v. Essociate, Inc. |

proposal uses all the words from the subject term and uses "system" twice. (Id. at 5.)

The Court agrees with Essociate that the term "unique identification system" should not be limited to a system that looks up a TWID during a correlation process based on a SWID in a received URL request.  These limitations are unnecessary. At each instance in the claim where the term "unique identification system" is used, context or modifiers clearly indicate which system it is, e.g., "the target Merchant affiliate system includes a unique identification system for its own affiliated webmasters."  '660 Patent 24:33-35.  This use in claim 28 clearly shows the unduly limiting nature of Direct ROI's construction.  In the quoted language describing a merchant affiliate system, it is discussing a merchant's own affiliates which would not involve any correlation or use of multiple identifiers.  Importing language about looking up a code during a correlation process between TWIDs and SWIDs would directly contradict this language.  Such contradiction would render the surrounding language meaningless, something to be avoided unless no other construction is reasonable.  Bicon, 441 F.3d at 950.

The Court also agrees with Direct ROI that use of the terms themselves being construed with little other language can be problematic.  Here, Essociate's proposed construction adds that the system is used to identify webmasters in an affiliate system but little beyond that.  Essociate discusses the dictionary meaning of the terms "system" and "unique" but does not incorporate them in their construction at all.  However, both parties use "system"and "unique" in their proposed construction.  This implies a lack of dispute over the acquired meaning of those words in this context, likely because the ordinary and plain meaning is readily apparent to a lay person.  The Court finds the other portion of Essociate's proposal supported by the specification and claim context.  Accordingly, the Court will construe this term as "a system for using unique identification information to identify at least one webmaster in an affiliate system."

C.    "Target Webmaster Unique Identifier"

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

Case No.   **CV 10-2107 JVS(MLGx)*****          Date   February 6, 2012
           consolidated with CV 10-6892 JVS (MLGx)

Title   **Essociate, Inc. v Blue Whaler Investments, LLC, et al.**
        Consolidated with ShareASale.com, Inc. v. Essociate, Inc.

| Claim Term | Plaintiffs' Construction | Defendants' Construction |
|---|---|---|
| "target Webmaster unique identifier" (Claims 1-27) | "Unique identification information used to track a webmaster within a source affiliate pool, who can direct traffic to a merchant affiliate system." | "A unique identifying code assigned to each source Webmaster in the source affiliate pool by the recognition system and that is functional within the target Merchant's home Affiliate System and which corresponds to the unique identification system of the requested Merchant's home Affiliate System." |

Essociate asserts its construction is supported by the patent specification, pointing to language that states "a target Webmaster ID, which is a unique identifying code functional within the target Merchant's home affiliate system and which corresponds to the unique identification system of the requested Merchant's home affiliate system."  (Pl.'s Op. Br. 9.)  It argues that Direct ROI's proposal imposes unsupportable and vague limitations by requiring assignment of the code "by a recognition system." (Id.)  Essociate argues that the only reference to a recognition system includes no reference to assigning a TWID.  (Id.)  In its response Essociate argues that Direct ROI's construction is illogical on its face because of the use of "a" unique identifying code assigned to "each source webmaster."  (Pl.'s Resp. Br. 5).  Essociate contends this grammatically means that the same single code is assigned to all source webmasters.  (Id.)

Direct ROI also argues the patent itself supports its construction, citing in part the same passage as Essociate, quoted above.  (Def.'s Op. Br. 5.)  It argues that Essociate uses ambiguous pronominal phrasing and indefinite pronouns that create an unnecessary lack of clarity.  Thus, Direct ROI contends its proposal

Case 8:10-cv-02107-JVS-MLG   Document 421   Filed 02/06/12   Page 9 of 23   Page ID #:223

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | **CV 10-2107 JVS(MLGx)*** | Date | February 6, 2012 |
|---|---|---|---|
| | consolidated with CV 10-6892 JVS (MLGx) | | |

| Title | **Essociate, Inc. v Blue Whaler Investments, LLC, et al.** |
|---|---|
| | Consolidated with ShareASale.com, Inc. v. Essociate, Inc. |

provides clearer and fuller context.

The Court finds Essociate's proposed construction to be unclear and over broad. The proposal seems to ignore the word "target" and would seem to apply to both a TWID and SWID. A SWID also is used to track a webmaster in a source affiliate pool and, through the claimed invention, can direct traffic to a merchant affiliate system. In fact, it is more consistent with a SWID since a TWID is not used per se within a source affiliate pool, but in the target pool. A TWID is used to track webmasters <u>from</u> the source affiliate pool as their traffic enters and traverses the target affiliate network, so the proposal is not completely inconsistent with this construction. Regardless, this proposal is over broad and fails to give meaning to the word target.

Additionally, several of Essociate's arguments are unclear. The quoted section of the specification seems to better support Direct ROI's proposed construction. Further, it says the reference to a "recognition system" does not refer to assigning a TWID but the passage it quotes says "[t]his source Webmaster ID is utilized by <u>the recognition system</u> 400 to perform an initial function that identifies the source Webmaster ID as from the affiliate pool and <u>correlates</u> it <u>to another unique ID</u> code that can be utilized by the particular Merchant's existing affiliate system, <u>referred to below as the target</u> <u>Webmaster ID</u>." '660 Patent 8:4-10 (emphasis added). Combined with the proposed construction of correlation where a relationship can be "created," this phrase essentially says the recognition system assigns a TWID. This passage says the recognition system utilizes a SWID to perform a function where the SWID is identified and then creates or recognizes a relationship between the SWID and a TWID. The assignment of a TWID to a source Webmaster and the creation of a relationship between a SWID and TWID are substantially the same. Therefore, neither of these arguments are convincing.

Direct ROI's construction is also flawed. Similar to its other proposed constructions, this one incorporates a limitation that is the subject of explicit language in the claim that would be rendered redundant and meaningless. Claim 1 specifies "a target Webmaster unique identifier, corresponding to the unique identification system of the requested Merchant affiliate system. . . ." '660 Patent

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | **CV 10-2107 JVS(MLGx)**\*\*\* | Date | February 6, 2012 |
| | consolidated with CV 10-6892 JVS (MLGx) | | |

| | |
|---|---|
| Title | **Essociate, Inc. v Blue Whaler Investments, LLC, et al.** |
| | Consolidated with ShareASale, Inc. v. Essociate, Inc. |

21:66-22:2.  Thus, Direct ROI's proposal would render "corresponding to the unique identification system of the requested Merchant Affiliate system" meaningless, a presumptively incorrect construction.  Bicon, 441 F.3d at 950.  Further, while the unique identifying code at issue here may be assigned by a "recognition system" as discussed above, the claim and specification do not support a limitation that this be the sole means.  The specification speaks of an embodiment where a data setup operation, prior to integrating the virtual affiliate system with the merchant affiliate system, involves laying out guidelines that would allow a merchant system to recognize where traffic comes from within a source pool of affiliates.  '660 Patent 8:34-60.  Presumably, this can occur through assignment of target system functional ID codes right then and there, not later by some recognition system.  This view is reinforced by the fact the construction of correlation allows for that act to create, as discussed above, or to merely recognize, implying the assignment of the TWID to a certain source webmaster has already occurred.  Therefore, the Court will not add either of these limitations to its construction.

The remaining portions of Direct ROI's proposal would then be "a unique identifying code assigned to each source Webmaster in the source affiliate pool that is functional within the target Merchant's home Affiliate System."  The Court finds this properly reflects the contextual ordinary and plain meaning of the term without imported limitations.  Further, Essociate's logic/grammar argument seems more appropriate if the construction used "the" and that the code "is assigned."  The Court does not find that grammar does not imply or compel that the same "unique" code is assigned to all source webmasters.   Therefore "target Webmaster unique identifier" will be construed as "a unique identifying code assigned to each source Webmaster in the source affiliate pool that is functional within the target Merchant's home Affiliate System."

D.     "Configuring an Existing Target Affiliate System"

| Claim Term | Plaintiffs' Construction | Defendants' Construction |
|---|---|---|
| "configuring an | "A data setup operation | "A data setup operation |

Case 8:10-cv-02107-JVS-MLG   Document 121   Filed 02/06/13   Page 11 of 23   Page
ID #:2225

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | |
|---|---|---|
| Case No. | **CV 10-2107 JVS(MLGx)*** | Date   February 6, 2012 |
| | consolidated with CV 10-6892 JVS (MLGx) | |

| | |
|---|---|
| Title | **Essociate, Inc. v Blue Whaler Investments, LLC, et al.** |
| | Consolidated with ShareASale.com, Inc. v. Essociate, Inc. |

| existing target affiliate system" (Claims 1-14) | relating to a system, operated directly or indirectly by a merchant, in which a group of webmasters direct traffic to a merchant." | that includes assigning to each content provider or Source Webmaster in an affiliate pool of webmasters a unique identifying code Source Webmaster ID that will be used to (1) track referral traffic received from the Source Webmasters, (2) correlate to a Target Webmaster ID code that can be used by a Merchant Affiliate System, and (3) allow the return of a URL that enables traffic to be handed off to and recognized by the particular Merchant Affiliate System" |
|---|---|---|

Essociate first points out that both parties agree this term means in part a data setup operation. (Pl.'s Op. Br. 10.) It argues that this is the meaning of "configuring." (Pl.'s Resp. Br. 6.) Essociate then says the plain language indicates the operation should "relate" to an existing target affiliate system. (Pl.'s Op. Br. 10.) It asserts its construction of "existing target affiliate system" is consistently supported by the specification. (Id.) Essociate then argues that Direct ROI's proposal has no clear basis and simply incorporates other limitations present in the '660 patent claims without illuminating the construed term. (Id. at 11-12.) Essociate contends that several of the limitations are improperly imported from the specification and that others violate the doctrine of claim differentiation. It violates this doctrine because the proposed construction includes "assigning," "correlating," and "generating" steps that are disclosed in other express terms of the '660 Patent's independent claims. (Id. at 7.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   **CV 10-2107 JVS(MLGx)*****            Date   February 6, 2012
           consolidated with CV 10-6892 JVS (MLGx)

Title      **Essociate, Inc. v Blue Whaler Investments, LLC, et al.**
           Consolidated with ShareASale.com, Inc. v. Essociate, Inc.

Direct ROI argues that Essociate has ignored the term "configuring" entirely. (Def.'s Op. Br. 6.) It further argues that Essociate's construction is too broad to stand because it would include "virtually every form of e-commerce." (Id.) Finally, it states that its construction best reflects the patent itself while. (Id.) The Court rejects these first two arguments as incorrect or irrelevant on their face. "Configuring" is addressed by Essociate, it constructs this portion of the term as "a data setup operation." Whether or not Essociate's proposed construction could include all of e-commerce is irrelevant because the breadth of a single term of a claim in isolation has little weight in claim construction without pointing to some limitation or description in the patent that would be inconsistent with that breadth. Each term must be read in the context of the entire claim, not in isolation. Phillips, 415 F.3d at 1314-15. Thus, the Court finds no reason to reject Essociate's proposal.

Additionally, Direct ROI's construction is flawed. The Court agrees with Essociate that it improperly imports limitations from the specification. The Court does not agree that the doctrine of claim differentiation as framed by Essociate has any application here. Claim differentiation is the presumption that each claim in a patent has a different scope. Comark Communs. v. Harris Corp., 156 F.3d 1182, 1187 (Fed. Cir. 1998). Thus, independent claims should not be construed to have limitations explicitly discussed in claims dependent upon them. Id. In this instance, the steps Direct ROI reads into the construction of this term are not from other claims, but from the same claim (although they also appear in other claims). Nevertheless, reading explicit limitations of a claim into the meaning of another term of that claim is still something to be avoided as the Court has discussed previously. Thus, the overall point still stands.

Essociate's proposal reflects the plain meaning of the term. A data setup operation is discussed frequently in the specification when referring to the configuration of different systems. See '660 Patent 8:32-24; 8:35-41; 9:31-34. The specification describes a Merchant's affiliate system that "in use . . . sends traffic through their surrounding Merchant affiliate system." '660 Patent 7:23-25. Later it refers to the same system as the "Merchant's existing affiliate system." '660 Patent 7:43-44. In the context of other terms, Essociate has represented that

Case 2:10-cv-02107-JVS-MLG   Document 140-1   Filed 02/06/13   Page 13 of 23   Page
ID #:2225

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | **CV 10-2107 JVS(MLGx)*** | Date | February 6, 2012 |
|---|---|---|---|
| | consolidated with CV 10-6892 JVS (MLGx) | | |

| Title | **Essociate, Inc. v Blue Whaler Investments, LLC, et al.** |
|---|---|
| | Consolidated with ShareASale.com, Inc. v. Essociate, Inc. |

Target and Merchant affiliate systems are "somewhat synonymous." (Pl.'s Resp.
Br. 12.) It would seem that there can be Merchant affiliate systems existing that
are not targeted by a virtual affiliate system and that such a virtual affiliate system
can target non-merchant affiliate systems. However, in the context of a virtual
affiliate system invention claim, it would be unlikely to refer to a merchant system
not being targeted to "receive referrals" from a source affiliate pool. Here the
claim itself shifts from describing the "existing target affiliate system" to "the
target merchant affiliate system." '660 Patent 21:48-51. The context of the
language and the specification shows these terms are referring to the same system.
Furthermore this additional language clarifies "existing target affiliate system"
such that elaboration in the construction is not required. Therefore, the Court will
construct this term in accordance with Essociate's proposal.

    E.    <u>"Generating a URL"</u>

| Claim Term | Plaintiffs' Construction | Defendants' Construction |
|---|---|---|
| "generating a URL" (Claims 1-27) | "Causing a URL to appear in a user's web browser without a further user request." | "The process of generating a URL that contains a 'looked up' code (that is, a Target Webmaster ID) and the referring webmaster unique identified (that is, the Source Webmaster ID) and serves as an entry mechanism into the target Merchant's existing Affiliate System." |

Both parties contend their construction is supported by the patent itself.
(Def.'s Op. Br. 6; Pl.'s Op. Br. 12.) Direct ROI argues that Essociate's proposal is
blind to context and uses URL in an overly general manner that would allow a user
to click on a URL without any relevance to the patent. Essociate argues that Direct

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

| | | | |
|---|---|---|---|
| Case No. | **CV 10-2107 JVS(MLGx)*****<br>consolidated with CV 10-6892 JVS (MLGx) | Date | February 6, 2012 |

| | |
|---|---|
| Title | **Essociate, Inc. v Blue Whaler Investments, LLC, et al.**<br>Consolidated with ShareASale.com, Inc. v. Essociate, Inc. |

ROI imports limitations both from the specification and from explicit language in the claim already. (Pl.'s Op. Br. 13.)

These arguments are related. The context Direct ROI seeks to provide comes in part from an embodiment described in the specification ("looked up"). There is no basis in the claim itself to incorporate this. Most of the other context Direct ROI seeks to place in this term is again language echoing other explicit limitations of the patent, something unnecessary and improper ("contains a . . . Target Webmaster ID" and "serves as an entry mechanism). Bicon, 441 F.3d at 950. Some of the added language appears to be simply incorrect or unsupported ("a URL that contains . . . the referring webmaster unique identifier (that is the Source Webmaster ID)"). (Def.'s Op. Br. 6.) The cited portion of the specification does not mention the placement of the Source Webmaster ID or a referring webmaster unique identifier beyond the TWID. Therefore, none of this excess language should be incorporated into the meaning of "generating a URL."

Direct ROI's fear that a click on an irrelevant URL could meet this definition without context is misguided. The claim is analyzed as a whole in construction and for a finding of infringement. The context is provided by the other language in the claim explicitly. Therefore, the Court follows Essociate's construction.

F.    "Correlated Target Webmaster [Merchant] Unique Identifier"

| Claim Term[2] | Plaintiffs' Construction | Defendants' Construction |
|---|---|---|
| "correlated target Webmaster Merchant unique identifier" | "A target webmaster unique identifier for which a relationship has | "A unique ID identified through a look up process (on the fly or having been |

---

[2]Essociate and Direct ROI discuss this term as "correlated target Webmaster unique identifier," without "Merchant" and state it first appears in claim 1. (Pl.'s Op. Br. 15; Def.'s Op. Br. 7.) Claim 1, nor any other claim contains this exact phrase, therefore the Court will construe "correlated target Webmaster Merchant unique identifier" and treat the parties' arguments as directed towards that.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   **CV 10-2107 JVS(MLGx)*****          Date   February 6, 2012
consolidated with CV 10-6892 JVS (MLGx)

Title   **Essociate, Inc. v Blue Whaler Investments, LLC, et al.**
Consolidated with ShareASale.com, Inc. v. Essociate, Inc.

| (Claims 1-27) | been recognized with a source webmaster" | assigned previously) for the target Merchant Affiliate System (that is, the Target Webmaster ID) via the correlating process." |
|---|---|---|

Essociate argues its construction follows from the constructions it proposed for terms A) and C).  (Pl.'s Op. Br. 14.)  Further, it argues that the "look-up" process is but one embodiment of the claimed invention, and Direct ROI's attempt to limit the claim to that embodiment is improper.  (Id.)

Direct ROI argues its proposed construction is supported by use of the terms in the patent.  (Def.'s Op. Br. 7.)  It contends Essociate's construction here is inconsistent with that proposed for "correlating."  (Id.)  Specifically, here it limits correlating to only recognition where previously it proposed that correlating could be recognition or creation of a relationship.  (Id.)

The Court agrees with both parties' critiques.  There is no basis for limiting the correlation to a look-up process as the Court has already determined. Additionally, the constructions should be consistent, and the Court sees no reason to limit correlation to only recognition in this term.  The Court also agrees the construction of this term should reflect the construction of terms A) and C).  Fin Control Systems Pty. Ltd. v. OAM, Inc., 265 F.3d 1311, 1318 (Fed. Cir. 2001) ("the same terms appearing in different portions of the claims should be given the same meaning unless it is clear from the specification and prosecution history that the terms have different meanings at different portions of the claims"). Accordingly, the Court construes this term to mean "a unique identifying code assigned to each source Webmaster in the source affiliate pool that is functional within the target Merchant's home Affiliate System for which a relationship has been created or recognized with a source webmaster identifying code."

G.    "Source Webmaster Unique Identifier"

Case 2:10-cv-02107-JVS-MLG    Document 140-1    Filed 06/25/13    Page 16 of 23    Page
ID #:2240
Case 2:10-cv-02107-JVS-MLG    Document 141    Filed 02/06/12    Page 16 of 23    Page
ID #:2240

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    **CV 10-2107 JVS(MLGx)*****                    Date    February 6, 2012
            consolidated with CV 10-6892 JVS (MLGx)

Title       **Essociate, Inc. v Blue Whaler Investments, LLC, et al.**
            Consolidated with ShareASale.com, Inc. v. Essociate, Inc.

| Claim Term | Plaintiffs' Construction | Defendants' Construction |
|---|---|---|
| "source Webmaster unique identifier" (Claims 1-40) | "A unique identifying code assigned to a webmaster within an affiliate pool of source webmasters." | "A unique identifying code (Source Webmaster ID) assigned to each Webmaster in the affiliate that will be used to (1) perform an initial function that identifies the webmaster as from the Affiliate Pool of Webmasters, (2) correlate to a Target Webmaster ID code that can be used by a Merchant Affiliate System, and (3) allows the return of a URL that enables traffic to be handed off to and recognized by the particular Merchant Affiliate System." |

Essociate contends its construction of this term is consistent with the specification and the plain language used throughout the patent. (Pl.'s Op. Br. 15.) It points out that Direct ROI's construction imports limitations that are the subject of other express terms of the claim. Direct ROI says the patent itself supports its proposed construction and cites to several passages of the specification. (Def.'s Op. Br. 7.)

The Court finds that Direct ROI's construction imports improper limitations into the meaning of this term. These limitations would improperly render other portions of the claim superfluous. Bicon, 441 F.3d at 950. Specifically, the claims include explicit steps about the generation of a URL, the correlation of a TWID to

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

| Case No. | **CV 10-2107 JVS(MLGx)**\*\*\* | Date | February 6, 2012 |
|---|---|---|---|
| | consolidated with CV 10-6892 JVS (MLGx) | | |

| Title | **Essociate, Inc. v Blue Whaler Investments, LLC, et al.** |
|---|---|
| | Consolidated with ShareASale.com, Inc. v. Essociate, Inc. |

be used in a Merchant affiliate system, and an initial configuration allowing source webmaster to be identified as a webmaster within an affiliate pooling system. '660 Patent 22:3-7; 21:66-67; 21:48-53. Essociate's construction is not challenged specifically by Direct ROI. The Court finds this construction to reflect the plain and ordinary meaning for these terms as determined by the context of the claim and specification. Therefore, this term is construed according to Essociate's proposal.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | **CV 10-2107 JVS(MLGx)**\*** | Date | February 6, 2012 |
|---|---|---|---|
| | consolidated with CV 10-6892 JVS (MLGx) | | |

| Title | **Essociate, Inc. v Blue Whaler Investments, LLC, et al.** |
|---|---|
| | Consolidated with ShareASale.com, Inc. v. Essociate, Inc. |

H.  "Referring Webmaster"

| Claim Term | Plaintiffs' Construction | Defendants' Construction |
|---|---|---|
| "referring Webmaster" (Claims 1-40) | "A webmaster from which traffic is directed." | "A particular webmaster from which traffic is directed to the target merchant website." |

The parties' constructions are similar with the exception that Direct ROI seeks to restrict the definition to only webmasters whose traffic is directed to a target merchant website.  This limitation is improper because the act of "directing" is governed by other explicit steps in the patent claim. '660 Patent 22:5-6 Additionally, the provided construction would confuse rather than illuminate where traffic is first routed through a virtual affiliate system prior to arriving at a merchant website.  Therefore, the Court adopts Essociate's proposed construction "A webmaster from which traffic is directed."

I.  "Merchant Affiliate System"

| Claim Term | Plaintiffs' Construction | Defendants' Construction |
|---|---|---|
| "Merchant affiliate system" (Claims 1-40) | "A system, operated directly or indirectly by a merchant, in which a group of webmasters direct traffic to a merchant." | "A computer system that uses a tracking mechanism to allow a Merchant to see where its traffic is originating from (that is, from a given advertisement at a given URL) and to determine advertising compensation based on quantity of traffic and/or the traffic's performance." |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | **CV 10-2107 JVS(MLGx)\*\*\*** | Date | February 6, 2012 |
| | consolidated with CV 10-6892 JVS (MLGx) | | |

| | |
|---|---|
| Title | **Essociate, Inc. v Blue Whaler Investments, LLC, et al.** |
| | Consolidated with ShareASale.com, Inc. v. Essociate, Inc. |

Essociate argues that this term is "somewhat synonymous" to "existing target affiliate system" and therefore provides a construction echoing that it provided for term D). (Pl.'s Op. Br. 17.) It further argues that contrary to Direct ROI's proposal, this term does not mean only systems that use tracking of origination and determination of compensation. (Id.) Direct ROI cites to several passages in the specification as evidence its proposal is "consistent with the '660 patent." (Def.'s Op. Br. 8.)

The Court agrees that Direct ROI's definition improperly imports limitations from the specification. Callicrate, 427 F.3d at 1368 (Fed. Cir. 2005). Direct ROI provides no basis other than citations to the specification discussing an embodiment of the invention. This is insufficient and the Court therefore adopts Essociate's construction.

J.      "Virtual Affiliates"

| Claim Term | Plaintiffs' Construction | Defendants' Construction |
|---|---|---|
| "Virtual Affiliates" (Claims 1-40) | "Webmasters who direct traffic to one or more merchants via the placement of links to merchant websites on the webmasters' websites, but who are independent from the merchants' own affiliate systems." | "A subset of a group of Merchant affiliated Webmasters that each send traffic to the Merchant through the Merchant's existing affiliate system while remaining independent and even anonymous from the Merchant's Affiliate System." |

Both parties argue that their proposals are most consistent with the language of the patent specification. (Pl.'s Op. Br. 18; Def.'s Op. Br. 9.) The primary difference between the proposals is whether Virtual Affiliates must or may be

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    **CV 10-2107 JVS(MLGx)***        Date    February 6, 2012
            consolidated with CV 10-6892 JVS (MLGx)

Title    **Essociate, Inc. v Blue Whaler Investments, LLC, et al.**

            Consolidated with ShareASale.com, Inc. v. Essociate, Inc.

anonymous to the merchant affiliate system. The passage cited by Direct ROI states in part "the Virtual Affiliate may remain anonymous." '660 Patent 7:51-52. This clearly shows anonymity is a possibility but not a requirement for the patented invention. The Court therefore rejects Direct ROI's proposal and adopts Essociate's.

K.    "Existing Target Affiliate System"

| Claim Term | Plaintiffs' Construction | Defendants' Construction |
|---|---|---|
| "existing target affiliate system" (Claims 1-27) | "An existing system, operated directly or indirectly by a merchant, in which a group of webmasters direct traffic to a merchant." | "The Merchant's existing affiliate system is a full framework of affiliate services that operates as the Merchant's affiliate program to track traffic and any transactions initiated by the traffic to credit the referring Webmaster." |

Essociate argues this construction is dictated by the same arguments underlying its proposal for term D) which contains this term. (Pl.'s Op. Br. 19.) Direct ROI argues its construction is consistent with the patent, while Essociate contends it imports limitations from the specification. (Def.'s Op. Br. 9; Pl.'s Op. Br. 19.) The Court finds this term has already been constructed as part of term D) and does not appear separate from the full phrase in term D). Therefore, it will adopt the same construction it did previously, reflected in Essociate's proposal.

L.    "Stored Transaction Information"

| Claim Term | Plaintiffs' Construction | Defendants' Construction |
|---|---|---|
| "stored transaction | "Stored data associated | "Stored data associated |

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

Case No.   **CV 10-2107 JVS(MLGx)**\*\*\*                     Date   February 6, 2012
            consolidated with CV 10-6892 JVS (MLGx)

Title      **Essociate, Inc. v Blue Whaler Investments, LLC, et al.**
            Consolidated with ShareASale.com, Inc. v. Essociate, Inc.

| information"<br>(Claim 5) | with transactions." | with transactions between a Source Webmaster and a Target Webmaster." |
|---|---|---|

Essociate argues the specification supports its proposed construction and that no specific data need to be defined because the specification talks only about what data "may" be part of this stored information. (Pl.'s Op. Br. 20.) It also argues that Direct ROI's construction is "nonsensical and bizarre" because it imagines transactions between the webmasters rather than transactions between target merchants and users referred from the source webmaster's website. (Id.)

Direct ROI argues that Essociate's definition simply rearranges the words and uses a synonym for information while its proposal is more clear and concise. (Def.'s Op. Br. 9.)

The Court agrees that no types of transactions between source and target webmasters are disclosed in the patent. Therefore, removing that portion of Direct ROI's proposal, the remaining language is identical to Essociate's. The Court thus adopts that language.

### III.   CONCLUSION

For the foregoing reasons, the Court construes the disputed terms as follows:

| Disputed Claim Term | Court's Construction |
|---|---|
| "correlating"<br>(Claims 1-40 ) | "creating or recognizing a relationship between" |
| "unique identification system"<br>(Claims 1-40 ) | "a system for using unique identification information to identify at least one webmaster in an affiliate system" |

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   **CV 10-2107 JVS(MLGx)*****          Date   February 6, 2012
           consolidated with CV 10-6892 JVS (MLGx)

Title      **Essociate, Inc. v Blue Whaler Investments, LLC, et al.**
           Consolidated with ShareASale.com, Inc. v. Essociate, Inc.

| | |
|---|---|
| "target Webmaster unique identifier" (Claim 1-27) | "a unique identifying code assigned to each source Webmaster in the source affiliate pool that is functional within the target Merchant's home Affiliate System" |
| "configuring an existing target affiliate system" (Claims 1-14) | "a data setup operation relating to a system, operated directly or indirectly by a merchant, in which a group of webmasters direct traffic to a merchant" |
| "generating a URL" (Claims 1-27) | "causing a URL to appear in a user's web browser without a further user request" |
| "correlated target Webmaster Merchant unique identifier" (Claims 1-27) | "a unique identifying code assigned to each source Webmaster in the source affiliate pool that is functional within the target Merchant's home Affiliate System for which a relationship has been created or recognized with a source webmaster identifying code" |
| "source Webmaster unique identifier" (Claims 1-40) | "a unique identifying code assigned to a webmaster within an affiliate pool of source webmasters" |
| "referring Webmaster" (Claims 1-40) | "a webmaster from which traffic is directed" |
| "merchant affiliate system" (Claims 1-40) | "a system, operated directly or indirectly by a merchant, in which a group of webmasters direct traffic to a merchant" |
| "virtual affiliates" | "webmasters who direct traffic to one |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   **CV 10-2107 JVS(MLGx)***         Date   February 6, 2012
consolidated with CV 10-6892 JVS (MLGx)

Title   **Essociate, Inc. v Blue Whaler Investments, LLC, et al.**
Consolidated with ShareASale.com, Inc. v. Essociate, Inc.

| (Claims 1-40) | or more merchants via the placement of links to merchant websites on the webmasters' websites, but who are independent from the merchants' own affiliate systems" |
|---|---|
| "existing target affiliate system" (Claims 1-27) | "an existing system, operated directly or indirectly by a merchant, in which a group of webmasters direct traffic to a merchant" |
| "stored transaction information" (Claim 5) | "stored data associated with transactions" |

IT IS SO ORDERED.

                                                     :        00

                          Initials of Preparer      kjt